GARY STULL, JR., Plaintiff-Appellee, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES et al., Defendants-Appellants.

Fifth District   No. 5—91—0621

Opinion filed December 31, 1992.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellants.

Ralph H. Loewenstein, of Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The Illinois Department of Children and Family Services (hereinafter referred to as DCFS or the Department), Jess McDonald and Susan Suter, as successor to Jess McDonald as Director of the Department, bring this appeal pursuant to the Administrative Review Law (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 *et seq.*), seeking review of a decision of the circuit court of Randolph County which reversed the decision of DCFS refusing to expunge from the State central register a report of an indicated finding of sexual exploitation by Gary Stull, Jr., of two of his high school students. (In *Board of Education of Sparta Community Unit School District No. 140 v. Illinois State Board of Education* (1991), 217 Ill. App. 3d 720, 577 N.E.2d 900, we held that Stull had properly been dismissed from his position as a high school teacher/coach for engaging in unremediable immoral conduct by writing overtly sexual letters to two female students—the same conduct which was alleged in the instant case.) The circuit court found that DCFS had lost jurisdiction over the investigation by failing to complete that investigation within the statutory time limit and had lost jurisdiction to deny Stull's request that the finding of exploitation be expunged from the State central register by its failure to hold an appeal hearing and render a decision thereon within the statutory time limit, and that the delays in the investigation and appeals process had violated Stull's right to due process. The circuit court ordered that the decision of DCFS refusing to expunge the finding be reversed and that DCFS expunge the report indicating a finding of sexual exploitation by Stull.

We will set forth the statutory framework within which this case presents itself and then set forth the facts of the case. Under the

Abused and Neglected Child Reporting Act (Ill. Rev. Stat. 1989, ch. 23, par. 2051 *et seq.*) (hereinafter the Act), DCFS is charged with receiving and investigating reports of child abuse or neglect made under the Act. (Ill. Rev. Stat. 1989, ch. 23, par. 2057.3.) The Act also provides for a central register of all cases of suspected child abuse or neglect reported under the Act. Ill. Rev. Stat. 1989, ch. 23, par. 2057.7.

According to section 7.12 of the Act, DCFS

"shall determine, within 60 days, whether the report [of abuse or neglect] is 'indicated' or 'unfounded' and report it forthwith to the central register; where it is not possible to initiate or complete an investigation within 60 days the report may be deemed 'undetermined' provided every effort has been made to undertake a complete investigation. [DCFS] may extend the period in which such determinations must be made in individual cases for additional periods of up to 30 days for good cause shown. [DCFS] shall by rule establish what shall constitute good cause. (Ill. Rev. Stat. 1987, ch. 23, par. 2057.12.)[1]

An "indicated" report means that there is credible evidence that the alleged abuse or neglect exists. An "unfounded" report means that there is no credible evidence that the abuse or neglect exists. An "undetermined" report means that it was not possible to initiate or complete an investigation on the basis of information provided to DCFS. Ill. Rev. Stat. 1989, ch. 23, par. 2053.

Section 7.16 of the Act provides:

"Within 60 days after the notification of the completion of the [DCFS] investigation, determined by the date of the notification sent by [DCFS], a subject of a report may request [DCFS] to amend, expunge identifying information from, or remove the record of the report from the [central] register. *** If [DCFS] refuses to do so or does not act within 30 days, the subject shall have the right to a hearing within [DCFS] to determine whether the record of the report should be amended, expunged, or removed on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this Act ***. Such hearing shall be held within a reasonable time after the subject's request and at a reasonable place and hour. *** The decision shall be made, in writing, at the close of the hearing,

---

[1]The alleged child abuse and DCFS investigation occurred prior to September 11, 1989, when section 7.12 of the Act was effectively amended to allow multiple 30-day periods of extension (Pub. Act 86—904, eff. Sept. 11, 1989). We therefore cite to this section of the Act as it read in 1987.

or within 30 days thereof, and shall state the reasons upon which it is based." Ill. Rev. Stat. 1989, ch. 23, par. 2057.16.

Finally, rules promulgated by DCFS pursuant to the Act provide:

"On the day [DCFS] receives a written or oral request for an appeal, the appeal process shall begin. [DCFS] shall make its final administrative decision on the appealed issue and take any corrective action specified in the decision within 90 calendar days from the date the appeal process began." (89 Ill. Adm. Code §309.11 (1989).)

Further, "[t]he administrator of the review and appeal system shall schedule the hearing at a date within 30 calendar days of the date the appellant stated that the review did not resolve the issue to the appellant's satisfaction." 89 Ill. Adm. Code §309.16(a) (1989).

In the instant case, the record shows that a complaint alleging sexual abuse by Stull of two of his high school students was made pursuant to the Act, and a DCFS investigation commenced, on April 25, 1989. On July 27, 1989, the DCFS investigation was completed, and on July 28, 1989, 93 days after the investigation began, the report was entered in the central register as "indicated." It is undisputed that DCFS did not seek an extension of time in which to make a report to the central register, as permitted by section 7.12 of the Act. It is also undisputed that the "indicated" report was made 33 days after the 60-day time limit established in section 7.12 of the Act.

On August 21, 1989, Stull was notified in writing by DCFS that a report had been issued against him indicating sexual exploitation by him of two of his high school students. On September 26, 1989, Stull filed a request to amend/expunge the "indicated" report for the reasons that it was unsupported by law and fact, and that DCFS had lost jurisdiction over the investigation by failing to complete it within the statutory time period.

On October 17, 1989, Stull's request to amend/expunge was denied by DCFS. In its ruling, DCFS found that credible evidence to support the "indicated" finding had been documented. Stull was informed of his right to a hearing to review DCFS's decision. On October 20, 1989, Stull notified DCFS of his desire for such a hearing "as soon as possible."

On November 1, 1989, Stull was notified by DCFS: "Due to the numerous requests for administrative hearings that this office receives, we will not be able to schedule your hearing for several months." The hearing was eventually scheduled for October 2, 1990, and Stull was so notified on September 7, 1990.

On September 17, 1990, Stull filed a motion to dismiss the "indicated" report for the reasons that DCFS had lost jurisdiction to make an "indicated" report by its failure to complete the investigation within the statutory time period, and that the finding was not supported by law or fact. This motion was denied by the hearing officer. The hearing officer expressly found that Stull had neither alleged nor demonstrated that he was prejudiced by the length of the investigation. The hearing officer further found that the 60-day statutory time limit within which an investigation must be completed is directory, not mandatory, and is therefore not jurisdictional. Accordingly, dismissal of the "indicated" finding was not an appropriate remedy.

On November 29, 1990, Stull filed another motion to dismiss the "indicated" report for the reason that a decision had not been rendered on Stull's appeal of the denial of his request to amend/expunge the report within the statutory time period of 30 days provided in section 7.16 of the Act or within the time period specified in DCFS regulations promulgated pursuant to the Act.

The recommendation and opinion of the hearing officer at the October 2, 1990, hearing was issued on December 18, 1990. It was adopted by Jess McDonald, Director of DCFS, on December 21, 1990, and Stull was so notified on that date. The decision denied Stull's request for expungement of the record, finding that DCFS had presented credible evidence to support an "indicated" finding that Stull had sexually exploited, through indecent solicitation by explicit verbal enticement, two of his high school students. It is undisputed that the decision of the DCFS Director was made 456 days after the appeal process began and 80 days after the hearing was held.

■ The relevant time periods for our purposes are as follows. The DCFS investigation must be completed within 60 days of receipt of the complaint, or within 90 days of receipt of the complaint if a 30-day extension is obtained for good cause. (Ill. Rev. Stat. 1987, ch. 23, par. 2057.12.) In the instant case, the investigation was completed 93 days after the complaint was received, and no extension for good cause was sought or obtained. If the subject of an "indicated" finding requests a hearing on the denial of his request to expunge/amend the finding, that hearing must be held within a reasonable time after the request. (Ill. Rev. Stat. 1989, ch. 23, par. 2057.16.) In the instant case, the hearing was held nearly one year (347 days) after it was requested. A decision must be made at the close of the hearing or within 30 days thereof. (Ill. Rev. Stat. 1989, ch. 23, par. 2057.16.) The decision in the instant case was rendered 80 days after the hearing was held. According to administrative rule, the hearing shall be sched-

uled within 30 days of the request, and a final decision must be reached within 90 days of the beginning of the appeal process. (89 Ill. Adm. Code §§309.16(a), 309.11 (1989).) The final decision in the instant case was not rendered until 456 days after the appeal process began.

On January 29, 1991, Stull filed in the circuit court of Randolph County a complaint for administrative review of the decision of DCFS. The complaint alleges that the decision of DCFS is not in accordance with the law for the following reasons:

> (a) the investigation was not completed within the statutory time limit, and no extension was sought or obtained;

> (b) the allegations against Stull did not place the alleged victims within the definition of "abused child";

> (c) the determination of "indicated" report did not fall within the definitions provided by DCFS;

> (d) a written decision was not rendered on Stull's appeal within the time period set by statute and administrative rule;

> (e) the decision of DCFS is against the manifest weight of the evidence; and

> (f) the evidence presented at the hearing of October 2, 1990, was admitted in violation of the administrative rules and regulations established by DCFS, and the evidence prejudiced Stull. Stull's brief argued that: DCFS had lost jurisdiction to render an "indicated" finding by its failure to complete the investigation within the statutory time limit; DCFS violated administrative regulations at the hearing of October 2, 1990, in that at least 15 pages of the DCFS file had not been turned over to Stull two days before the hearing, as required by DCFS regulations; DCFS lost jurisdiction by failing to decide Stull's appeal within the time limit established by statute and administrative rule; and DCFS failed to prove its substantive charges either legally or factually. Stull asked that his allegations of error be reviewed individually and cumulatively.

Hearing was held on the complaint on July 22, 1991. At the conclusion of the hearing, the circuit court found that: (1) DCFS had lost jurisdiction over the matter on two occasions by virtue of its failure to abide by the statutory time periods, and (2) the delay in the appeals process had violated Stull's right to due process. The court reversed the decision of DCFS denying Stull's request to expunge the indicated finding and ordered DCFS to expunge that report. The circuit court did not address the other issues raised by Stull, that is, whether he was denied a fair hearing by DCFS's failure to turn over to him its

entire investigatory file prior to the hearing and whether DCFS proved its allegations both factually and legally. A written order was filed July 29, 1991. DCFS filed its notice of appeal on August 26, 1991.

On appeal, DCFS argues that it did not lose jurisdiction over this matter because the time limits set forth in the statutes and agency regulations are directory and not mandatory. Furthermore, DCFS argues, the circuit court erred in finding that the delay in the investigation and appeals process violated Stull's due process rights.

■ To give validity to its findings and orders, an administrative agency must comply with the procedures and rules promulgated by the legislature. (*Ragano v. Illinois Civil Service Comm'n* (1980), 80 Ill. App. 3d 523, 527, 400 N.E.2d 97, 100.) The purpose of judicial review of an administrative agency's decision is to keep the agency within its statutory grant of authority and thus guard the rights of the parties which are guaranteed by the constitution and statute. (*Ragano*, 80 Ill. App. 3d at 527, 400 N.E.2d at 100.) An administrative agency derives its power solely from the statute by which it was created. (*Illinois Power Co. v. Illinois Pollution Control Board* (1985), 137 Ill. App. 3d 449, 452, 484 N.E.2d 898, 900.) The failure to comply with a mandatory provision of a statute will render void the proceeding to which the provision relates. (*Illinois Power Co.*, 137 Ill. App. 3d at 452, 484 N.E.2d at 900.) Furthermore, such rules as are lawfully adopted by an administrative agency pursuant to statutory authority have the force of law and bind the agency to them. (*Little v. Civil Service Comm'n* (1985), 131 Ill. App. 3d 848, 851, 476 N.E.2d 448, 450.) This is particularly true where the agency's noncompliance with its own rules prejudices one who is subject to the authority of the agency. *Little*, 131 Ill. App. 3d at 851, 476 N.E.2d at 450.

■ ■ Whether a statutory provision is directory or mandatory depends on the legislative intention, to be ascertained from the nature and object of the act and the consequences which would result from any given construction. (*Serpico v. Urso* (1984), 127 Ill. App. 3d 667, 670, 469 N.E.2d 355, 358.) While use of the word "shall" is generally regarded as mandatory, the term does not have a fixed or inflexible meaning and can be construed as merely directory, depending on the legislative intent. (*Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21, 373 N.E.2d 1332, 1335.) It has often been recognized that the word "shall" is intended to have a directory meaning where the provision merely directs a manner of conduct for the guidance of public officials or where the section is designed to secure order, system, and dispatch in proceedings. However, even in such circumstances, the term will be

given a mandatory meaning if the provision also contains negative language which prohibits performance of the acts required if they are not done in the manner designated or if an individual's rights will be injuriously affected by a failure to abide by the provision's direction. (*People v. Wilson* (1986), 146 Ill. App. 3d 567, 577, 499 N.E.2d 972, 978, *rev'd in part on other grounds* (1988), 121 Ill. 2d 585, 523 N.E.2d 549.) Thus, the word "shall" may be held to be merely directory only where no advantage is lost, no right is destroyed, and no benefit is sacrificed, either to the public or to any individual (*Serpico*, 127 Ill. App. 3d at 670-71, 469 N.E.2d at 358), or where the statute does not provide sanctions for failure to comply with the provision in dispute (*Peoples Independent Party v. Petroff* (1989), 191 Ill. App. 3d 706, 708, 548 N.E.2d 145, 146). Where the word "shall" is employed with reference to any right or benefit, and the right or benefit depends upon giving a mandatory meaning to the word, it cannot be given a permissive meaning. (*Andrews*, 71 Ill. 2d at 21, 373 N.E.2d at 1335.)

> "In brief summary, when a statute prescribes the performance of an act by a public official or a public body, the question of whether it is mandatory or directory depends on its purpose. If the provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time. If, however, the conduct is prescribed in order to safeguard someone's rights, which may be injuriously affected by failure to act within the specified time, the statute is mandatory." *Andrews*, 71 Ill. 2d at 21, 373 N.E.2d at 1335.

Both sides present strong arguments as to why we should construe the time limitations set forth in the Act and DCFS regulations as either directory or mandatory. In *Shawgo v. Department of Children & Family Services* (1989), 182 Ill. App. 3d 485, 538 N.E.2d 234, the appellate court discussed whether the time limits set forth in section 7.16 of the Act and section 309.16 of DCFS's own rules, both at issue in the instant case, are mandatory or directory. These sections provide, respectively, that a hearing on the denial of a subject's request for expungement of the record must be held within a reasonable time of the request therefore and that the hearing must be held within 30 days of the request. The court in *Shawgo* held that these time limits are not mandatory but are merely directory. We quote at length therefrom:

"Petitioner correctly points out an administrative agency occasionally loses jurisdiction at a preliminary stage of proceedings because of administrative delay, and this loss of jurisdiction creates a result favorable to a party adverse to the agency. *** In these cases the party obtaining the benefit was a party respondent to the proceedings and gained the benefit because the agency no longer had power to impose a burden, such as a discharge from civil service employment, upon the respondent.

Here, petitioner sought relief from the agency, and, if the agency lost the power to act, ordinarily the result of that loss of power would prevent the party seeking relief from getting it. The only cases called to our attention where a petitioner before an administrative agency has been held to be entitled to affirmative relief by the agency because of its failure to proceed with dispatch involve statutes which expressly provide for the granting of the relief upon the failure of the agency to act. *** We see no indication here of a legislative intent that a 'subject' is to be entitled to expungement upon any failure to act by DCFS." (*Shawgo*, 182 Ill. App. 3d at 488-89, 538 N.E.2d at 236.)

The court went on to explain that the Act evidences a dual policy or purpose: (1) to protect children from abuse and neglect; and (2) to protect subjects from the detrimental effect of inaccurate reports. The court concluded that the legislature did not intend the provision requiring DCFS to hold a hearing within a reasonable time after a request to be a limit on the jurisdiction of the agency.

We find no cases which address whether the time limit set forth in section 7.12 of the Act within which DCFS must complete its investigation is mandatory or directory. However, whether deemed to be mandatory or directory, the time limitations set forth in the Act and administrative rules at the very least reflect the judgment of the legislature and the agency as to what constitutes a reasonable length of time in which the agency must act. We think it follows that a gross deviation from those time limitations would be deemed to be unreasonable and contrary to the legislative intent, evidenced by the setting of time limitations, that the agency act in a reasonably timely manner.

In the instant case, hearing on the denial of Stull's request to expunge the record was not held until 347 days after it was requested, despite an administrative rule that such hearings be scheduled within 30 days of the request. Final decision following the hearing took an additional 80 days, despite the Act's requirement that the decision be

rendered within 30 days of the hearing. Thus, the final decision on Stull's appeal of the denial of his request to expunge the record was not rendered until 456 days after the appeal process began, despite an administrative rule that final decisions be rendered within 90 days of the beginning of the appeal process. We think such a delay in the appeal process is unreasonable and served to deprive Stull of his constitutional right to procedural due process.

■ The due process clause of the fourteenth amendment to the United States Constitution provides that certain substantive rights— life, liberty and property—cannot be deprived except pursuant to constitutionally adequate procedures, that is, due process. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 541, 84 L. Ed. 2d 494, 503, 105 S. Ct. 1487, 1493.) Having an indicated report placed on the State central register may result in the deprivation of a protected liberty interest, for such a report may prohibit one from engaging in certain professions, such as child care worker, teacher or foster parent. See, *e.g.*, Ill. Rev. Stat. 1987, ch. 23, par. 2218(a).

Due process is flexible and calls for such procedural protections as the particular situation demands. (*United States v. $8,850 in United States Currency* (1983), 461 U.S. 555, 564, 76 L. Ed. 2d 143, 152, 103 S. Ct. 2005, 2012.) One of the requirements of due process is a hearing at a "meaningful time." (*Loudermill*, 470 U.S. at 547, 84 L. Ed. 2d at 507, 105 S. Ct. at 1496.) The due process clause does not require a specific time frame in which to provide a hearing but requires a hearing at a meaningful time. (*Gunia v. Cook County Sheriff's Merit Board* (1991), 211 Ill. App. 3d 761, 768, 570 N.E.2d 653, 657.) Generally, the most important criterion in the area of procedural due process is "reasonableness." The State must act reasonably before depriving a person of a liberty or property interest. *In re Application of County Collector* (1988), 166 Ill. App. 3d 11, 16, 518 N.E.2d 1253, 1256.

■ We think, as did the circuit court, that the lengthy delay in the appeal process in the instant case was unreasonable and served to deprive Stull of the fundamental fairness which due process requires. For over one year, Stull had an indicated report of child abuse entered against him on the State central register. During this period of time he was prohibited from engaging in certain professions and lived with the stigma of being branded a child abuser. The consequences of being listed on the State central register as a child abuser are grave and require that the subject of such a report be provided a hearing in which to contest the report within a short time. While we are unwilling to set a specific time limit, believing that such a task is better left

to the legislature, we do find that nearly one year is an unreasonable length of time. Accordingly, we affirm the decision of the circuit court of Randolph County reversing the decision of DCFS and ordering DCFS to expunge from the State central register the indicated report regarding Stull.

We are not unsympathetic to the enormous problems faced by DCFS in terms of limited and shrinking resources and increasing, perhaps overwhelming, workload. Nor are we unaware of the important function which the State central register serves in protecting the interests of our children and the potential danger posed by expungement of an indicated report of child abuse. However, the right of our citizens to due process of law remains paramount. We leave it to the legislature to resolve the continuing problems presented by the limited resources provided to DCFS to perform its difficult task of protecting the children of our State.

For the foregoing reasons the judgment of the circuit court of Randolph County is affirmed.

Affirmed.

CHAPMAN, P.J., and W.A. LEWIS, J., concur.