NO. 4-03-0075

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MICHAEL MONTALBANO, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

) McLean County

THE ILLINOIS DEPARTMENT OF CHILDREN AND ) No. 01MR186

FAMILY SERVICES and JESS McDONALD, )

Director, ) Honorable

Defendants-Appellees. ) Elizabeth A. Robb,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Michael Montalbano, appeals the circuit court's order upholding a final administrative decision of defendant, Illinois Department of Children and Family Services (Department), denying his request to expunge an indicated finding of sexual penetration, molestation, and substantial risk of harm.  We reverse.

I. FACTS

On January 10, 2000, the Department received a report that an unknown person, soon thereafter identified as Michael Montalbano, had sexually abused an 11-year-old girl.  The following week, a Department investigator and two Illinois State Police officers began conducting interviews of the girl, her mother, Montalbano, and others.  Following an investigation, on March 22, 2000, the Department issued a finding, based on a "credible evidence" standard, indicating Montalbano for sexual penetration, sexual molestation, and substantial risk of harm.

On April 30, 2000, Montalbano wrote to the State Central Register's administrator requesting that the Department review its decision and provide him with the reports related to the investigation.  After receiving these materials, Montalbano sent a November 2, 2000, letter to the Department stating that the information in its records was inaccurate and should be amended or destroyed.  This internal review was denied.  According to the Department's brief, this occurred on February 14, 2001.  The date is not disputed, although no documentation appears in the record.  On February 16, 2001, Montalbano wrote to the Department's administrative hearings unit, stating that he wished to appeal the indicated finding and asking that the indicated report be expunged.

On June 25, 2001, an administrative law judge (ALJ) held a hearing to consider Montalbano's request to expunge the indicated finding against him from the State Central Register.  At the hearing, Montalbano made three motions.  The first requested a directed finding on the grounds that there was no opportunity to cross-examine the minor and no corroboration of the minor's statements.  This motion was denied.  The second sought to dismiss the case because the Department failed to call a mandated reporter to testify at the hearing.  This motion was also denied.  The third motion requested an alteration of the "safety plan" under which Montalbano was prohibited from living in his home.  The ALJ ordered the Department to review the safety plan in response.

On July 2, 2001, the ALJ issued an opinion denying Montalbano's request for expungement from the State Central Register.  The ALJ found the Department's witnesses to have testified credibly, and determined that the Department had met its burden to prove the accuracy and consistency of the report indicating Montalbano.  The Director of the Department adopted the ALJ's findings of fact and conclusions of law on September 19, 2001.

On October 9, 2001, Montalbano filed a three-count complaint with the circuit court of McLean County, naming the Department and its Director, Jess McDonald, as defendants.  Count I sought administrative review of the Department's decision of September 19, 2001, contending that the decision was against the manifest weight of the evidence.  Count II requested a declaratory judgment that the Department had deprived Montalbano of due process by delaying the proceedings.  Count III sought that the court declare the "safety plan" void.

In its final order of January 6, 2003, the circuit court (1) denied count I because the Department's decision was not against the manifest weight of the evidence; (2) denied count II because Montalbano failed to object during the administrative process to the untimeliness of the hearing and decision; and (3) granted count III, finding that the safety plan should be reviewed.  This appeal followed.  The safety plan of count III is not at issue on appeal. 

II. ANALYSIS

Plaintiff argues that delays between his request for administrative appeal and the Department's final decision deprived him of due process.  We agree.

Generally, a court conducting an administrative review will not consider an issue or defense not raised at the administrative level.  
Texaco-Cities Service Pipeline Co. v. McGaw
, 182 Ill. 2d 262, 278, 695 N.E.2d 481, 489 (1998).  This rule has been applied to constitutional due process challenges.  
S.W. v. Department of Children & Family Services
, 276 Ill. App. 3d 672, 679, 658 N.E.2d 1301, 1307 (1995).  Defendants assert that by not raising the issue at the administrative level, plaintiff has waived his due process argument.  However, waiver is "an admonition to the parties rather than a limitation on [the] court's jurisdiction" (
Texaco-Cities Service Pipeline Co.
, 182 Ill. 2d at 279, 695 N.E.2d at 489) and does not prevent us from considering the merits of plaintiff's argument in the interests of justice.  We therefore address plaintiff's due process argument.

Under section 7.16 of the Abused and Neglected Child Reporting Act (Reporting Act), once a person has been "indicated" on the State Central Register for suspected abuse, the subject of the report "may request the Department to amend the record or remove the record of the report from the register."  325 ILCS 5/7.16 (West 2000).  If the Department rejects this request, the subject may appeal.

First, the subject may request in writing that the Department review its decision.  89 Ill. Adm. Code §336.40(c) (Conway Greene CD-ROM April 2001).  If the Department again refuses to expunge the indicated finding, the Department must issue a notice of right to an administrative hearing.  89 Ill. Adm. Code §336.40(a) (Conway Greene CD-ROM April 2001).  Alternatively, if the Department fails to act within 10 days after being requested to review its initial decision, the subject may request an administrative hearing to review the decision.  325 ILCS 5/7.16 (West 2000).  By statute, this hearing must be provided "within a reasonable time after the subject's request."  325 ILCS 5/7.16 (West 2000).  A Department regulation further provides that the Department shall make a final decision within 90 days of the request for a hearing.  89 Ill. Adm. Code §336.220(a) (Conway Greene CD-ROM April 2001).  Finally, the underlying statute provides that the Department's final decision must be issued within 45 days of the hearing.  325 ILCS 5/7.16 (West 2000).

It is undisputed in this case that the Department failed to comply with either the 90-day deadline under the regulations or the 45-day statutory limit.  Plaintiff requested an administrative hearing on February 16, 2001, the hearing was held June 25, 2001, and the Director issued the Department's final decision on September 19, 2001.  This meant intervals of 215 days from plaintiff's request until a final Department decision and of 86 days from the hearing until the decision.

This court recently had occasion to consider the due process implications of the Department failing to follow its own statutory and regulatory timetable in an appeal of an indicated finding.  
Lyon v. Department of Children & Family Services
, 335 Ill. App. 3d 376, 780 N.E.2d 748 (2002), 
appeal allowed
, 203 Ill. 2d 549, 788 N.E.2d 729 (2003).  
The Second District had previously held that a person may not be indicated on the register merely on the basis of credible evidence (
Cavarretta v. Department of Children & Family Services
, 277 Ill. App. 3d 16, 660 N.E.2d 250 (1996)) but had not addressed the effect of having a postindication hearing under a preponderance-of-the-evidence standard.  In 
Lyon
, we made clear that only the right to a prompt hearing under a preponderance-of-the-evidence standard saved the indication on the basis of credible evidence from being a denial of due process.  
Lyon
, 335 Ill. App. 3d at 389, 780 N.E.2d at 759.  We held that "[i]f the Department enters an 'indicated' report *** on the basis of 'credible evidence' rather than a preponderance of the evidence, 
due
 
process
 
requires
 
the
 
Department
 
to
 
strictly
 
comply
 
with
 
its
 
statutory
 
and
 
regulatory
 
deadlines
 
for
 
processing
 
the
 
administrative
 
appeal
."  (Emphasis added.)  
Lyon
, 335 Ill. App. 3d at 390, 780 N.E.2d at 759.  Under 
Lyon
, therefore, the Department's failure to comply with the time limits contained in the statute and regulations poses a due process problem.  Defendants' attempts to convince us that 
Lyon
 does not control this case are unpersuasive.

Defendants first argue that no liberty interest is at stake, and thus due process has no application.  Any procedural due process analysis must begin with a determination that life, liberty, or property is at issue; otherwise no process is due.  
Polyvend, Inc. v. Puckorius
, 77 Ill. 2d 287, 293-94, 395 N.E.2d 1376, 1378-79 (1979).  We are unmoved by defendants' efforts to minimize the significance of being placed on the State Central Register of suspected child abusers.  Being placed on the register has been found to implicate both a federal liberty interest (
Cavarretta
, 277 Ill. App. 3d at 22, 660 N.E.2d at 254) and an Illinois constitutional due process right (
Cavarretta
, 277 Ill. App. 3d at 24, 660 N.E.2d at 255)).  Defendants attempt to distinguish cases such as the 
Cavarretta
 decision on the ground that they involved teachers, whereas the plaintiff in this case is a police dispatcher.  But we said in 
Lyon
 that "[c]onsidering the deep abhorrence in which society holds sexual predators of children, the 'indicated' finding could make Lyon unemployable in any profession."  
Lyon
, 335 Ill. App. 3d at 389-90, 780 N.E.2d at 759.  Thus, the fact that plaintiff has not suffered any adverse employment consequences at his current job does not make his being placed on the register any less legally significant.

Defendants also assert that because the regulation containing the 90-day limit was not promulgated until June 2000, it has no application in this case.  However, plaintiff's request for a hearing and all subsequent events occurred after the regulation had been put into place.  The procedural context in 
Lyon
 was very similar, in that the regulation was introduced after the indicated finding was placed on the register.  We did not hesitate there to insist that the Department comply with its own regulation requiring it to issue a decision within 90 days.  
Lyon
, 335 Ill. App. 3d at 385-87, 780 N.E.2d at 756-57.

The Department violated both its own 90-day time limit for rendering a decision after a request for a hearing and the statutory 45-day limit on issuing a decision after the hearing has been held.  In doing so, it deprived plaintiff of due process.

Plaintiff also argues that the decision of the ALJ was against the manifest weight of the evidence.  We disagree.

The findings and conclusions of an administrative agency on questions of fact are held to be 
prima
 
facie
 true and correct.  735 ILCS 5/3-110 (West 2000).  In reviewing an administrative agency's decision, the reviewing court's role is limited to determining "whether the findings and decision of the agency are against the manifest weight of the evidence."  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  An administrative agency decision will be found to be against the manifest weight of the evidence "only if the opposite conclusion is clearly evident."  
Abrahamson
, 153 Ill. 2d at 88, 606 N.E.2d at 1117.

The ALJ heard a number of witnesses at the June 25, 2001, administrative hearing.  The witnesses had interviewed the child victim and her mother.  The ALJ found these witnesses to have testified credibly, and their testimony is more than adequate to support a finding that plaintiff abused the child.  We cannot say that the ALJ's finding was against the manifest weight of the evidence.

Plaintiff next argues that his motion for directed finding should have been granted, because he was not given an opportunity to cross-examine the minor and because her hearsay testimony was not sufficiently corroborated.  This argument is based on 
In re A.P.
, 179 Ill. 2d 184, 688 N.E.2d 642 (1997).  That case interpreted a provision of the Juvenile Court Act of 1987 (Juvenile Court Act), providing:

"Previous statements made by the minor re-

lating to any allegations of abuse or neglect 

shall be admissible in evidence.  However, no 

such statement, if uncorroborated and not 

subject to cross-examination, shall be suffi-

cient in itself to support a finding of abuse 

or neglect."  705 ILCS 405/2-18(4)(c) (West 

2000).

Plaintiff argues that although 
A.P.
 involved a different forum than we are concerned with here, this is "a distinction without a difference."  However, the forum makes all the difference.  The above-cited provision concerns the admissibility of evidence in a civil adjudicatory hearing to determine whether a minor has been abused or neglected.  
A.P.
, 179 Ill. 2d at 194, 688 N.E.2d at 648.

Here, in contrast, the relevant forum was an administrative hearing.  In administrative proceedings, the provisions of the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/1-1 through 15-10 (West 2000)) apply.  20 ILCS 505/4 (West 2000).  Under the Procedure Act, administrative agencies must generally follow the rules of evidence applied in civil cases in the circuit courts, but "[e]vidence not admissible under those rules of evidence may be admitted *** (except where precluded by statute) if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs."  5 ILCS 100/10-40(a) (West 2000).

The Department's rules grant an ALJ the authority to "conduct a fair, impartial[,] and formal hearing in which the strict rules of evidence do not apply."  89 Ill. Adm. Code §336.120(b)(1) (Conway Greene CD-ROM April 2001).  The rules also provide that the ALJ may:

"allow into evidence all evidence helpful in 

determining whether an alleged perpetrator 

abused or neglected a child, *** even though 

not competent under the civil rules of evi-

dence."  89 Ill. Adm. Code §336.120(b)(9)

(Conway Greene CD-ROM April 2001).

The clear meaning of these provisions is that the ALJ is permitted to rely on hearsay in reaching a decision, although such evidence would not be admissible under the rules of evidence.  

Because this case concerns an administrative hearing, and not a proceeding under the Juvenile Court Act, plaintiff's objection that the minor's hearsay statements were not corroborated by other evidence is unavailing.

Plaintiff's final argument is that the indicated finding must be expunged because the "mandated reporter," a teacher, did not testify at his hearing.  A Department rule provides, in relevant part, as follows:

"Any person who makes a report or who investi-

gates a report may be ordered by the [c]ourt to 

testify fully in any judicial proceeding re-

sulting from the report about any evidence of 

the abuse or neglect or the cause of the abuse 

or neglect.  Any mandated reporter listed in 

subsection (b)(1) who makes a report of sus-

pected child abuse or neglect shall testify 

fully in any administrative hearing resulting 

from such report, as to any evidence of abuse 

or neglect or the cause thereof."  89 Ill.

Adm. Code §300.30(e) (Conway Greene CD-ROM 

April 2001).

Plaintiff asserts that because the rule states that the mandated reporter "shall testify" at the hearing, the failure of that person to testify requires expungement of the indicated finding.  We disagree.

We review 
de
 
novo
 an administrative agency's interpretation of its own rules, but the agency's interpretation "enjoys a presumption of validity."  
Nolan v. Hillard
, 309 Ill. App. 3d 129, 143, 722 N.E.2d 736, 747 (1999).  Here, the Department, through its ALJ, determined that the rule merely requires that if the Department chooses to call the mandated reporter to testify at the hearing, the mandated reporter must testify fully.  This interpretation comports with the language and apparent purpose of the rule.  While it might often be useful to have the testimony of the mandated reporter, it is difficult to imagine that this person's testimony would 
always
 be useful.

Because the rule does not require the mandated reporter to testify in all proceedings, the plaintiff's motion to expunge the indicated finding on that basis was properly denied.

III. CONCLUSION

For the foregoing reasons, we reverse the circuit court's judgment.

Reversed.

APPLETON, J., concurs.

MYERSCOUGH, P.J., specially concurs in part and dissents in part.

PRESIDING JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:  

I respectfully concur in part and dissent in part.  I agree the ALJ's decision was not against the manifest weight of the evidence, the ALJ was permitted to rely on hearsay evidence, and the ALJ correctly denied the motion to expunge because the agency’s rule does not mandate the reporter to testify in all proceedings.  However, I disagree that the time between administrative appeal and the Department's final decision deprived Montalbano of due process because he did not receive a final decision for seven months.  I have previously dissented in this issue (
Lyon
, 335 Ill. App. 3d 376, 780 N.E.2d 748).

"The Director issued his final decision on March 23, 2001, 246 days or a little over 8 months after the appeal process began.  Again, this was a period found acceptable by the 
S.W.
 court (
S.W. [v. Department of Children & Family Services
], 276 Ill. App. 3d [672,] 680-81, 658 N.E.2d [1301,] 1307-08 [(1995)]); and it was significantly shorter than the period that was found unconstitutional in 
Stull [v. Department of Children & Family Services
], 239 Ill. App. 3d [325,] 334-35, 606 N.E.2d [786,] 792 [(1992)] (456 days), or 
Cavarretta
, 277 Ill. App. 3d at 26, 660 N.E.2d at 257 (598 days)."  
Lyon
 335 Ill. App. 3d at 391, 780 N.E.2d at 760.    

Initially, Montalbano forfeited his right to complain about any delay.  Because Montalbano did not raise the issue of the timing of his expungement decision at the administrative level, he has forfeited the opportunity to raise the argument now.  
Cooper v. Department of Children & Family Services
, 234 Ill. App. 3d 474, 485-86, 599 N.E.2d 537, 544-45 (1992) (holding that where plaintiff fails to raise issue of timeliness of Department’s hearing at administrative level, the issue is waived on appeal).  “The rule of waiver applies equally to issues involving constitutional due process rights.”  
Smith v. Department of Professional Regulation
, 202 Ill. App. 3d 279, 287, 559 N.E.2d 884, 889 (1990).  “Raising an issue for the first time in the circuit court is unavailing because '[t]he waiver rule specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts.'”  
S.W.
, 276 Ill. App. 3d at 679, 658 N.E. 3d at 1307, quoting 
Smith
, 202 Ill. App. 3d at 287, 559 N.E.2d at 889; see also 
Texaco-Cities Service Pipeline Co.
, 182 Ill. 2d at 278-79, 695 N.E.2d at 489 (the doctrine of waiver limits a party’s ability to argue an issue on appeal that was not raised at the administrative level).

In 
Cooper
, this court found that the plaintiffs forfeited their claim that the Department violated their due process rights by failing to hold a day-care center revocation hearing in the 30-day statutory time frame because they did not raise the issue at the administrative level.  
Cooper
, 234 Ill. App. 3d at 486, 599 N.E.2d at 544-45.  As in 
Cooper
, Montalbano claims in this court that the Department failed to issue an expungement decision within the regulatory time frame and, thus, violated his right to due process.  But he did not voice this objection either (1) before or (2) at his hearing or (3) while he was waiting for a decision.  For these reasons, Montalbano cannot complain about the untimeliness of the Department’s decision as he has forfeited his right to challenge it on this ground.  

As this court explained in 
Shawgo v. Department of Children & Family Services
, 182 Ill. App. 3d 485, 490, 538 N.E.2d 234, 237 (
1989), Montalbano should have proceeded in 
mandamus
 if he believed that the Department was not diligent in issuing a decision.  See 
S.W.
, 276 Ill. App. 3d at 680, 658 N.E.2d at 1307
.   Moreover, Montalbano’s date of request was February 16, 2001, and, therefore, the actual time it took the Department to decide his case was only seven months, still not technically within the 90-day requirement, but not as egregiously outside of it as Montalbano claims.

The Department substantially complied with most of the statutory and regulatory time guidelines.  It conducted a hearing on June 25, 2001, 129 days or about 4 months after the February 16, 2001, request for a hearing.  The ALJ promptly issued a decision within only 7 days, and the Director adopted that decision within 86 days of the hearing.  Hence, Montalbano received a final decision from the Department within about seven months of his request (February 16, 2001, to September 19, 2001).  Thus, his assertions that he waited “seventeen months” for a decision must be rejected.  This delay did not constitute a denial of due process.

The applicable time frames outlined in section 7.16 of the Reporting Act (325 ILCS 5/7.16 (West 2000)) and in the related regulations must be construed as directory, not mandatory.  This is because, with the exception of section 7.16's 10- day limit, they set forth no penalties or consequences for the Department’s failure to abide by the time frames.  As this court held in 
Shawgo
, nothing in section 7.16 indicates that the legislature intended that a petitioner such as Montalbano would be entitled to automatic expungement upon the Department's failure to comply with the time frames set forth in section 7.16.  
Shawgo
, 182 Ill. App. 3d at 489, 538 N.E.2d at 236.

Because section 7.16 is directory in nature, so too must the Department’s regulations stemming from that section be directory in nature.  Although the Department’s regulation now provides for a decision to be rendered within 90 days (see 89 Ill. Adm. Code §336.220 (Conway Greene CD-Rom April 2001)), this regulation does not change or alter the “reasonable time” language set out in section 7.16 of the Reporting Act.  The Department promulgated this regulation pursuant to the authority granted by the Reporting Act.  An agency cannot change the terms of a statute through its regulations.  
Van's Material Co. v. Department of Revenue
, 131 Ill. 2d 196, 202-03, 545 N.E.2d 695, 699 (1989).     

Montalbano does not have a due process right to automatic expungement of the indicated finding based on the timing of the decision.  Before Montalbano can establish that he is entitled to due process protections, he must establish that he has some property or liberty interest at stake. "[T]he starting point in any procedural due process analysis is a determination of whether one of these protect[i]ble interests are present, for if there is not, no process is due."  
Polyvend, Inc.,
 77 Ill. 2d at 294, 395 N.E.2d at 1378-79.  While Montalbano may have some protectible interest in his position as a radio dispatcher for the Illinois State Police, his interest in his position was not apparently put at risk by the indicated finding.  Unlike the teachers in 
Lyon
, 
Cavarretta
, and 
Stull
, Montalbano’s employment is not jeopardized by the fact he has an indicated finding of child abuse on the State Central Register.  During the hearing, Montalbano provided the following information:

"MR. NOVICK [(plaintiff's attorney)]: You were indicated after the Illinois State Police found you didn’t do anything?

MR. MONTALBANO: Right.

MR. NOVICK: Did they ever take any employment action?

MR. MONTALBANO: No.

MR. NOVICK: Loose [
sic
] any pay?

MR. MONTALBANO: No.

MR. NOVICK: Get suspended?

MR. MONTALBANO: No.

MR. NOVICK: All you got was a letter saying they were closing the case?

MR. MONTALBANO: Right."

By contrast, the teachers in 
Lyon
, 
Cavarretta
, and 
Stull
, stood to lose their teaching certificates because they were named as perpetrators in an indicated report.  See 105 ILCS 5/21-23(b) (West 2000).  Because an indicated finding alone and without an implicated property or liberty interest does not constitutionally mandate automatic expungement based on the timing of the expungement decision, Montalbano’s claim of a constitutional right to expungement fails.

For these reasons, I would affirm the circuit court.